Sosman, J.
Plaintiff Xiomara Mejia-Cabral has brought the present action for wrongful death alleging that the negligence of defendants Eagleton School and two of its employees allowed a detained juvenile to escape and murder plaintiffs daughter. Defendants in turn filed a third-party complaint against the State of Connecticut, alleging that Connecticut authorities were negligent in placing the juvenile at Eagleton School. The State of Connecticut has moved to dismiss the third-party complaint on various grounds. Relying on principles of comify, this court recognizes the sovereign immunily of the State of Connecticut and allows its motion to dismiss.
Facts
Plaintiffs’ complaint alleges that one Miguel Alcoba, a young man with a long juvenile criminal record, had been adjudicated a “dangerous delinquent” under Connecticut law and incarcerated at a high-security facility in Middletown, Connecticut. On December 5, *453 1994, Alcoba was transferred to the Eagleton School in Great Barrington, Massachusetts pursuant to an agreement between the School and the Connecticut probation authorities who were supervising Alcoba. One of the terms of that agreement was that the School would not allow Alcoba any visits or trips off-site without the approval of Alcoba’s parole officer. The School was aware of Alcoba’s record and aware of the fact that he had been diagnosed with various severe psychiatric problems involving assaultive and anti-social behavior.
Within a few weeks of his arrival at the School, Alcoba indicated that he wanted to visit his family in Worcester. School staff contacted Connecticut authorities, who set some specific conditions that would have to be met before the requested family visit could be approved. Plaintiff alleges that the conditions were not met and that Connecticut authorities never approved the visit. Without Connecticut’s approval, the School nevertheless proceeded to allow Alcoba to go to Worcester on December 24, 1994. He was accompanied by defendant Frank Baldassare, a member of the School’s staff, who was to maintain custody of Alcoba during the time he was away from the School.
On the trip back to the School, Baldassare stopped to let Alcoba visit a friend of his. Baldassare stayed in the car and allowed Alcoba to go in for his visit alone. Alcoba took advantage of this opportunity and escaped from custody. Before he could be recaptured, he shot and murdered Xiomara “Ibi” Cabral. Based on this scenario, plaintiff has alleged that the School and its Clinical Director (defendant Jon Friedman) were negligent in releasing Alcoba for his family visit and that the School’s agent, defendant Baldassare, was further negligent in allowing Alcoba to go off on his own to see a friend.
Defendants’ third-party complaint against the State of Connecticut alleges that Alcoba was under the supervision and control of Connecticut’s Department of Children and Family Services and Connecticut’s Department of Probation and that the decision to place Alcoba at the School was made by Connecticut authorities. The third-party complaint then asserts that the incident was caused by the negligence of those Connecticut authorities “if in fact, the juvenile should not have been placed in a nonsecure setting, such as the Eagleton School.” Based on that alleged negligence, defendants seek “common law indemnification and contribution” from the State of Connecticut.
Discussion
Connecticut argues that it enjoys sovereign immunity from the kind of claim that has bem brought against it in this third-party complaint. Even if respect for its sovereign immunity is not constitutionally mandated, Connecticut asks this court to recognize its immunity as a matter of comity.
Although principles of sovereign immunity prevent a state from being sued in its own courts without its consent, there is no inherent constitutional immunity from suit in the courts of another state. Nevada v. Hall, 440 U.S. 410 (1979). In Hall, an employee of the State of Nevada had driven negligently on a highway in California, seriously injuring several California residents. At the time, Nevada had waived its sovereign immunity from such a suit in its own courts, subject to a $25,000 limit on damages. California law placed no such monetary cap on negligence suits against it. Plaintiffs sued Nevada in California state court. California’s highest court determined that Nevada could be sued in California state court and refused to honor the $25,000 cap on Nevada’s liability.
The Supreme Court held that the constitution did not require states to grant each other immunity, observing that “the Full Faith and Credit Clause does not require a State to apply another State’s law in violation of its own legitimate public policy,” 440 U.S. at 422. The Court in Hall expressly noted that the nature of the claim being brought — a claim of negligent operation of a motor vehicle — did not impinge on any governmental functions:
California’s exercise of jurisdiction in this case poses no substantial threat to our constitutional system of cooperative federalism. Suits involving traffic accidents occurring outside of Nevada could hardly interfere with Nevada’s capacity to fulfill its own sovereign responsibilities. We have no occasion, in this case, to consider whether different state policies, either of California or of Nevada, might require a different analysis or a different result.
440 U.S. at 424 n.24.
Unlike Hall, the present third-party complaint directly implicates important governmental functions and controversial policy choices. The sentencing and treatment of juveniles who have committed serious criminal offenses is a matter left entirely to the state, and striking the appropriate balance between the competing demands of rehabilitation and public safety is a policy problem that the state must address in each case. The prospect of one state’s court deciding whether another state was negligent in selecting a particular rehabilitation program for a juvenile offender is profoundly troubling, and this court’s assertion of jurisdiction over such a claim against the State of Connecticut would pose a “substantial threat to our constitutional system of cooperative federalism.” Id. The State of Connecticut makes a compelling argument that this third-party complaint would, if allowed to proceed, “interfere with [Connecticut’s] capacity to fulfill its own sovereign obligations” and that recognition of its sovereign immunity is therefore mandatory. Id.
Whether constitutionally mandated or not, this court retains the discretion to decline the exercise of *454 jurisdiction as a matter of comity. Hall itself observes that states may decide to recognize the sovereign immunity of sister states: “It may be wise policy, as a matter of harmonious interstate relations, for States to accord each other immunity or to respect any established limits on liability. They are free to do so.” 440 U.S. at 426. On grounds of comity, Connecticut asks this court to recognize its sovereign immunity and enforce the limitations and procedural conditions that Connecticut law would place on this claim. It would be “wise policy” for Massachusetts courts to honor that request.
Connecticut has enacted a limited waiver of sovereign immunity, requiring claimants to go through an administrative hearing and obtain approval from a Claims Commissioner before they may sue the state. The Claims Commissioner “may” authorize the claimant to bring suit against the state if he “deems it just and equitable.” Conn. Gen. Stat. §4-160. The Claims Commissioner may also authorize payment of claims up to a certain dollar amount (Conn. Gen Stat. §4-158) or, for higher awards, may recommend to the legislature that the claim be approved and paid (Conn. Gen. Stat. §4-159). The legislature itself may then accept or modify the recommendation, or it may reject the claim. If a claim is rejected, the legislature may “grant or deny the claimant permission to sue the state.” Conn. Gen. Stat. §4-159. Thus, Connecticut allows itself to be sued in its own courts only after either the Claims Commissioner or the legislature has waived immunity for that particular case.
In the present case, none of these defendants has submitted any claim to the Claims Commissioner, and no defendant has received permission to sue the state. Thus, if this court, as a matter of comity, enforces the terms of Connecticut’s limited waiver of sovereign immunity, it must dismiss the third-party complaint for failure to satisfy Connecticut’s prerequisites to suit. This court has no way of predicting whether, upon proper presentation of the claim, the Claims Commissioner would or would not authorize defendants to sue the State of Connecticut for contribution. However, given the profound policy implications at issue in this particular claim, Connecticut ought to be allowed the benefit of the claim screening procedures that it has set up.
The principle of comity has particular force in a case where, as a matter of its own policy, Massachusetts has decided that its sovereign immunity should not be waived. Massachusetts itself could not be sued in negligence with respect to its selection of a treatment facility for a juvenile offender (see G.L.c. 258, §10(b) and (j)), and it could not be sued for allowing a juvenile to escape unless the claimant made a showing of gross negligence (G.L.c. 258, §10(i)). Allowance of this motion to dismiss comports with Massachusetts’ own determination that such claims should not be recognized against a sovereign at all, and Massachusetts would certainly want its immunity respected by other states if such claims were brought against it elsewhere. Even if, as third-party plaintiffs argue, this claim would not be barred as against Massachusetts by one (or more) of the express exceptions to the Massachusetts Tort Claims Act, those exceptions illustrate the importance of the policy questions that pervade the subject of custody and rehabilitation of juvenile offenders. Where Massachusetts would certainly want those limitations respected by sister states, comity suggests that Massachusetts should respect the limitations that Connecticut has placed on such suits against it.
The court also notes that adherence to principles of comity in this case does not deprive any injured Massachusetts resident of any needed relief or undermine some other legitimate concern of this state. The plaintiff herself has not sued the State of Connecticut.[1] The only claim that is being pressed in this third-party claim is a joint tortfeasor’s claim for con- . tribution. This case does not present the problem of an injured Massachusetts resident unable to obtain relief from a negligent foreign state. Nor does this dismissal preclude defendants, if they are found liable, from presenting their claim for contribution through the procedures available to them in Connecticut.[2] Defendants point to no policy of this state that would be undermined by respecting the terms and conditions on which Connecticut has waived its sovereign immunity.
ORDER
For the foregoing reasons, the Motion to Dismiss Third-Party Complaint is ALLOWED.

 Indeed, the very essence of her negligence claim against defendants is that they themselves failed to get Connecticut’s approval or abide by Connecticut's conditions prior to letting Alcoba leave the School. She does not allege that the School premises or programs were inappropriate for Alcoba, nor was the crime a product of any escape from the School premises themselves. Rather, plaintiff alleges that the crime occurred when the School, without Connecticut’s approval, deliberately allowed Alcoba to leave the facility. The third-party complaint, alleging that Connecticut should not have sent Alcoba to the School in the first place, also does not allege that Connecticut approved Alcoba’s trip to Worcester. Thus, at least on the present pleadings, there is no allegation from any party attributing that fateful decision to anyone in Connecticut.

 The court does not have before it the terms of the agreement pursuant to which Connecticut sent Alcoba to the School. Whatever risks (including the risk of being sued) were undertaken by the School when it agreed to accept Alcoba as a student resident, it was free to insist on contract provisions (indemnification, insurance, etc.) to address those risks. It seems particularly inappropriate to flout principles of comity in order to protect a party that could have protected itself by way of contract in the first place.